1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TODD J. COOK,<br><br>                              Plaintiff,<br><br>     vs.<br><br>SOUTHERN CALIFORNIA EDISON,<br>an unknown business entity; and<br>DOES 1-20, inclusive,<br><br>                              Defendant. | CASE NO. 12cv2241 WQH (JMA)<br><br>**ORDER** |

HAYES, Judge:

The matter before the Court is the Motion to Dismiss the Complaint filed by Defendant Southern California Edison.  (ECF No. 12).

## BACKGROUND

On July 30, 2012, Plaintiff initiated this action by filing a Complaint in San Diego County Superior Court.  (ECF No. 1-1 at 2-9).  Plaintiff, a former employee of Defendant, alleges that "gender, marital status and legal conduct outside of work were motivating factors for Defendant terminating his employment."  *Id.* at 5.  Plaintiff asserts five claims for relief: (1) wrongful termination on the basis of gender, in violation of the California Fair Employment and Housing Act ("FEHA") (Cal. Gov. Code § 12940(a)); (2) wrongful termination on the basis of marital status, in violation of FEHA (*Id.*); (3) wrongful termination in violation of public policy under the California Labor Code (Cal. Cal. Code § 96(k)); (4) wrongful termination in violation of public policy under the California Constitution (Cal. Const. Art. 1, § 1); and (5) non-job-related inquiry in violation of FEHA (Cal. Gov. Code § 12940(d)).  On September

12, 2012, Defendant filed an Answer to the Complaint.  (ECF No. 1-3, Exh. A).

On September 13, 2012, Defendant removed the action to this Court.  (ECF No. 1).  Defendant asserts that this action arises under federal law because "the alleged actions of Defendant and the alleged injury to Plaintiff ... took place at the San Onofre Nuclear Generating Station ('SONGS'), or are otherwise related to Plaintiff's employment at SONGS, which is located on federally-owned land and is subject to the laws governing federal enclaves."  (ECF No. 1 at 2 (citing, *inter alia*, *Willis v. Craig*, 555 F. 2d 724, 726 (9th Cir. 1977)).

On January 22, 2013, Defendant filed the Motion to Dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).  (ECF No. 12).  On February 19, 2013, Plaintiff filed an opposition.  (ECF No. 16).  On March 1, 2013, Defendant filed a reply.  (ECF No. 19).

## ALLEGATIONS OF THE COMPLAINT

On September 17, 1990, Plaintiff began working for Defendant as a Nuclear Security Officer.  (ECF No. 1-1 ¶ 10).

In 2003, Plaintiff and his wife got divorced.  *Id.* ¶ 11.  "Plaintiff never informed any of Defendant's employees that he was in fact not married, and thereby held himself out as a married person."  *Id.*  "On or about June 21, 2010, Plaintiff was legally divorced."  *Id.*

"On or about June 21, 2010 through June 24, 2010, Plaintiff attended the National Nuclear Security Conference ... at a hotel in Charlotte, North Carolina.  This hotel was not located on federal or federally owned property.  Plaintiff brought a female companion with him to the convention."  *Id.* ¶ 12.

"After returning from the convention, Plaintiff was informed that Defendant would be conducting an investigation into [Plaintiff's] behavior at the conference in Charlotte, North Carolina.  Plaintiff underwent several interviews with investigators hired and acting on behalf of Defendant."  *Id.* ¶ 13.  For approximately the first ten minutes, "all of the questions ... focused on Plaintiff's marital status, as well as the

identity of his female companion." *Id.*  Investigators asked Plaintiff several times whether he was married; "Plaintiff responded that he was not." *Id.* ¶ 14.  "Plaintiff told the investigators that he was divorced.  The investigators then asked Plaintiff if he was separated or divorced.  Plaintiff again stated that he was divorced.  The investigators then asked Plaintiff if he was 'legally divorced.'  Plaintiff told them 'yes.'" *Id.* "[I]nvestigators asked Plaintiff who his female companion was.  Plaintiff provided the investigators with his female companion's name.  The investigators then asked Plaintiff if the woman was his wife or ex-wife.  Plaintiff responded that she was not.  The investigators then asked Plaintiff about the nature of his relationship with the woman." *Id.* ¶ 15.

"[O]n or about October 15, 2010, Defendants informed Plaintiff that his employment was terminated.  Plaintiff was advised that the decision to terminate him was made at Defendant's corporate office complex in Rosemead, California." *Id.* ¶ 15. "Defendant's corporate office in Rosemead, California is not on federal or federally owned property." *Id.*

"Plaintiff is informed and believes and thereon alleges that his gender, marital status and legal conduct outside of work were motivating factors for Defendant terminating his employment." *Id.* ¶ 17.  "Defendant made a non-job-related inquiry of Plaintiff that directly or indirectly expressed a limitation, specification, or discrimination as to Plaintiff's marital status." *Id.* ¶ 49.

## APPLICABLE STANDARD

Federal Rule of Civil Procedure 12(b)(6) permits dismissal for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).  Federal Rule of Civil Procedure 8(a) provides that "[a] pleading that states a claim for relief must contain ... a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  Dismissal under Rule 12(b)(6) is appropriate where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory.  *See Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

A plaintiff's "grounds" to relief must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting Fed. R. Civ. P. 8(a)(2)).  When considering a motion to dismiss, a court must accept as true all "well-pleaded factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).  However, a court is not "required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).  "In sum, for a complaint to survive a motion to dismiss, the non-conclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009) (quotations omitted).

## CONTENTIONS OF THE PARTIES

Defendant contends that the Court should dismiss the Complaint pursuant to Federal Rule of Procedure 12(b)(6).  Defendant asserts that SONGS, where Plaintiff was employed, is located within Camp Pendleton – a federal enclave acquired by the United States government in 1942.  Defendant contends that the federal enclave doctrine bars this action because "each of Plaintiff's five causes of action is based on state law recognized only after the acquisition of Camp Pendleton...." (ECF No. 12-1 at 5).

Plaintiff does not dispute that SONGS is located on a federal enclave.  Nor does Plaintiff dispute that each state law Defendant allegedly violated was enacted after the United States government acquired Camp Pendleton.  Rather, Plaintiff contends that the federal enclave doctrine does not apply because "the particular conduct Plaintiff has complained of within his Complaint occurred **away** from SONGS and off any federal enclave." (ECF No. 16 at 5).  Plaintiff asserts that "he has alleged both that the central events leading to the complained activity occurred in North Carolina, **off** any federal enclave, and the discriminatory decision to wrongfully terminate him was made at [defendant]'s corporate office located off SONGS in Rosemead, California." *Id.* at 6.

1 | If the Court grants the motion to dismiss, Plaintiff requests leave to amend.

2 | **APPLICABLE LAW**

3 | Congress has the power "[t]o exercise exclusive Legislation ... over all Places

4 | purchased by the Consent of the Legislature of the State in which the Same shall be, for

5 | the Erection of Forts, Magazines, Arsenals, dock-Yards, and other needful Buildings."

6 | U.S. Const. art. I, § 8, cl. 17.  "This constitutional provision permits the continuance of

7 | those state laws existing at time of surrender of sovereignty, except insofar as they are

8 | inconsistent with the laws of the United States or with the governmental use for which

9 | the property was acquired, unless they are abrogated by Congress, so that no area may

10 | be left without a developed legal system for private rights." *Stiefel v. Bechtel Corp.*,

11 | 497 F. Supp. 2d 1138, 1147 (S.D. Cal. 2007) (citing *Pacific Coast Dairy v. Dep't of*

12 | *Agric. of Cal.*, 318 U.S. 285, 294 (1943); *James Stewart & Co. v. Sadrakula*, 309 U.S.

13 | 94, 99-100 (1940)).  "Because the federal government has exclusive jurisdiction, [those

14 | state laws existing at time of surrender of sovereignty] become federal laws, although

15 | having their origin in the laws of the state." *Id.* (citing *James Stewart & Co.*, 309 U.S.

16 | at 100; *Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1250 (9th Cir. 2006)

17 | ("Federal courts have federal question jurisdiction over tort claims that arise on 'federal

18 | enclaves.'")).

19 | "Only state laws in effect at the time of cession or transfer of jurisdiction [to the

20 | federal government] ... can continue in operation [in the federal enclave]." *Id.* (citing

21 | *James Stewart & Co.*, 309 U.S. at 100).  "Laws subsequently enacted by the state are

22 | inapplicable in the federal enclave unless they come within a reservation of jurisdiction

23 | or are adopted by Congress." *Id.* (citing *James Stewart & Co.*, 309 U.S. at 99-100; *Paul*

24 | *v. United States*, 371 U.S. 245, 268 (1963)).

25 | **RULING OF THE COURT**

26 | "SONGS is located within a federal enclave, acquired by the United States in

27 | 1941 when it established Camp Pendleton." *Cooper v. S. Cal. Edison Co.*, 170 F. Appx.

28 | 496, 497 (9th Cir. 2006); *see also Stiefel*, 497 F. Supp. 2d at 1147 (taking judicial notice

of the fact that "SONGS is located within the federal enclave of Camp Pendleton, which was acquired by the federal government no later than December 31, 1942.").

In *Taylor v. Lockheed Martin Corp.*, 78 Cal. App. 4th 472 (2000), the plaintiff argued in opposition to a motion for summary judgment that his claims did not arise on a federal enclave because he had been placed on paid suspension and was not working on the enclave when he was terminated. *See Taylor*, 78 Cal. App. 4th at 481. The court stated: "The fortuity of a paid suspension before his termination does not mean that he ever worked for [defendant] outside the enclave or that his employment claims arose elsewhere.  As the employee of a contractor operating on the enclave, [plaintiff's] claims are governed by the enclave's law, rather than by state law." *Id.* (citations omitted).

Similarly, the plaintiffs in *Powell v. Tessada & Associates, Inc.*, C 04-05254 JF, 2005 WL 578103 (N.D. Cal. Mar. 10, 2005) were formerly employed by a defendant located on a federal enclave.  When plaintiffs were not retained by defendant, they filed an employment discrimination action, arguing that the federal enclave doctrine did not apply because defendant made its decision not to retain plaintiffs at defendant's corporate headquarters, located off the federal enclave.  The court found plaintiffs' argument "inconsistent with the holding in *Taylor*," because, according to *Powell*, the *Taylor* court "held that the defendants' employment practice *on the enclave* was controlling." *Id.* at *2.  The court concluded: "[R]egardless of where the decision not to retain Plaintiffs was made, the decision reflects Defendants' employment practice on the enclave. As a result, Plaintiffs cannot maintain their state law claims." *Id.; see also Lockhart v. MVM, Inc.*, 175 Cal. App. 4th 1452, 1459-60 (2009) ("*Taylor* and the federal authorities cited by [plaintiff] emphasize the [plaintiff]'s place of employment as the significant factor in determining where the plaintiff's employment claims arose under the federal enclave doctrine." (collecting cases)).

In this case, Plaintiff alleges that, "[o]n or about June 21, 2010 through June 24, 2010, Plaintiff attended the National Nuclear Security Conference ... at a hotel in

Charlotte, North Carolina.  This hotel was not located on federal or federally owned property."  *Id.* ¶ 12. Plaintiff alleges that, "[a]fter returning from the convention, Plaintiff was informed that Defendant would be conducting an investigation into [Plaintiff's] behavior at the conference in Charlotte, North Carolina." *Id.* ¶ 13. Plaintiff alleges that he "underwent several interviews with investigators hired and acting on behalf of Defendant," and was repeatedly asked about his marital status and the identity of the woman he was with at the conference.  *Id.*  Plaintiff alleges that, "on or about October 15, 2010, Defendants informed Plaintiff that his employment was terminated. Plaintiff was advised that the decision to terminate him was made at Defendant's corporate office complex in Rosemead, California.  Defendant's corporate office in Rosemead, California is not on federal or federally owned property."  *Id.* ¶ 15.

The Court finds the reasoning of *Taylor* and *Powell* persuasive.  It is undisputed that Plaintiff was employed by Defendant on a federal enclave.  Although Plaintiff alleges that Defendant made its decision to terminate Plaintiff's employment off of the federal enclave, the Court finds that "the decision reflects [Defendant's] employment practice on the enclave." *Powell*, 2005 WL 578103, at *2.  Accordingly, the Court finds that Plaintiff's claims arose on Camp Pendelton, a federal enclave.  *See id.* ("the defendants' employment practice *on the enclave* was controlling" for purposes of determining whether an employment discrimination claim arose in a federal enclave); *see also Taylor*, 78 Cal. App. 4th at 481 ("As the employee of a [defendant] operating on the enclave, [plaintiff's] [employment discrimination] claims are governed by the enclave's law, rather than by state law."); *Lockhart*, 175 Cal. App. 4th at 1459 ("Although [plaintiff] was at home at the time [plaintiff] received her termination letter – and although that letter may have originated at [defendant]'s corporate headquarters in Virginia – [plaintiff] was the employee of a federal contractor operating on a federal enclave.  Thus, her employment claims are governed by the enclave's law.").

The Complaint alleges state law causes of action pursuant to the California Constitution, FEHA and California Labor Code § 96(k), all of which were recognized

in California only after the federal government's acquisition of Camp Pendelton in 1942. "The common law claim for wrongful termination in violation of public policy was first recognized in California, at the earliest, in 1959." *Stiefel*, 497 F. Supp. 2d at at 1148-49. "FEHA was not enacted until 1980," *id.* at 1149, while "[t]he predecessor statutes of FEHA were contained in the Fair Employment Practices Act, which was not enacted until 1959." *Taylor*, 78 Cal. App.4th at 483. Section 96 of the California Labor Code was amended on October 10, 1999 to add subsection (k). *See* 1999 Cal. Legis. Serv. Ch. 692 (A.B. 1689). Plaintiff does not allege or argue that any of these claims "come within a reservation of jurisdiction [by California] or [have been] adopted by Congress." *Stiefel*, 497 F. Supp. 2d at 1147 (citing *James Stewart & Co.*, 309 U.S. at 99-100). The Court concludes that the Complaint alleges violations of laws inapplicable in the federal enclave. The motion to dismiss is granted.

## CONCLUSION

IT IS HEREBY ORDERED that the Motion to Dismiss the Complaint filed by Defendant (ECF No. 12) is GRANTED. Any motion for leave to file a first amended complaint shall be filed no later than thirty (30) days from the date of this Order.

DATED: June 11, 2013

**WILLIAM Q. HAYES**
United States District Judge